IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

MARK MONTGOMERY, *on behalf of himself and all others similarly situated*,

        Plaintiff,

v.

IEG HOLDINGS CORPORATION,

and

INVESTMENT EVOLUTION CORPORATION d/b/a MR. AMAZING LOANS,

and

PAUL MATHIESON,

        Defendants.

Civil Action No. 7:17-CV-00180

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff, Mark Montgomery ("Plaintiff"), by counsel, *on behalf of himself and all others similarly situated*, and for his Class Action Complaint against IEG Holdings Corporation, Investment Evolution Corporation d/b/a Mr. Amazing Loan, and Paul Mathieson (collectively "Defendants"), Plaintiff alleges as follows:

### INTRODUCTION

1. Like many other states, Virginia has enacted usury laws that prohibit companies from making high interest loans. The prohibition against the making of unethical monetary loans is not a modern principle; indeed, "[f]or nearly three-hundred years, American states were nearly unanimous in their prohibition of usurious lending through double—or even single-digit interest rate caps." Christopher L. Peterson, *"Warning: Predatory Lender"—A Proposal for Candid*

*Predatory Small Loan Ordinances*, 69 Wash & Lee L. Rev. 893, 896 (2012). With roots as ancient as the Bible, usury laws reflect society's *longstanding* view that it is unethical and, thus, illegal to charge excessive interest rates—a view hammered home by a variety of jurisdictions who have criminalized this conduct. *Id*. at 896, 899.

2. Despite the clear requirements of Virginia law, Defendant IEG Holdings Corporation ("IEGH") through its wholly owned subsidiary, Investment Evolution Corporation d/b/a Mr. Amazing Loans, makes loans in excess of 12% APR—the interest rate cap in Virginia unless the company obtains a consumer finance license from the Virginia State Corporation Commission. *See* Va. Code § 6.2-303(A). Defendant Paul Mathieson is the chief executive officer, founder and owner of IEGH and Investment Evolution Corporation. Defendants acted in concert with each other—and others not yet known to Plaintiff—to repeatedly violate Virginia's usury laws and collect unlawful debts from Plaintiff and the class members.

3. Based on Defendants' conduct, Plaintiff alleges that Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), which prohibits any person employed by or associated with an enterprise from collecting "unlawful debt." 18 U.S.C. § 1962(c). RICO defines "unlawful debt" as a debt incurred in "the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate." 18 U.S.C. § 1961(6).

4. Plaintiff also alleges a class claim pursuant to Virginia's usury laws, which prohibit any company from making such loans to Virginians in excess of 12% APR unless that company has obtained a consumer finance license from the Virginia State Corporation Commission. *See* Va. Code § 6.2-1541(A). Such loans are null and void and the lender or any third-party may not collect,

obtain, or receive any principal, interest, or charges whatsoever on said loans. Accordingly, Plaintiff seeks to disgorge all payments to Defendants.

5. Plaintiff further seeks a declaratory judgment, on behalf of himself and all others similarly situated, that any Promissory Note between Defendants and Virginia consumers is void and unenforceable pursuant to Virginia Code § 6.2-1541(A). Additionally, Plaintiff seeks an injunction against Defendants that prohibits them from collecting on these loans and requiring them to provide notice to all class members that their loans are unenforceable.

## JURISDICTION

6. This Court has jurisdiction pursuant to 18 U.S.C. § 1965 and 15 U.S.C. § 1692k(d). The Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. §§ 1367 and 1332(d)(2).

## PARTIES

7. Plaintiff Mark Montgomery is a natural person who resides in Virginia and in this District and Division.

8. Defendant IEG Holdings Corporation "provides $5,000 and $10,000 online personal loans in the United States."[1] During all times relevant, IEGH offered its illegal loans through its wholly owned subsidiary, Investment Evolution Corporation. Upon information and belief and as reflected by its Form 10-K filed with the Securities and Exchange Commission,[2] IEGH received proceeds from the illegal loans made to consumers in Virginia.

---

[1] *Overview*, Investment Evolution, http://www.investmentevolution.com/about-ieg-holdings/overview (last visited on April 18, 2017).

[2] Form 10-K: Annual Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 for the fiscal year ended December 31, 2016, IEG Holdings Corporation, p. 4 (Mar. 8, 2017), http://ir.investmentevolution.com/sec-filings?form_type=10-K#document-4099-0001493152-17-002220.

3

9. Defendant Investment Evolution Corporation ("Investment Evolution") d/b/a Mr. Amazing Loans is a wholly owned subsidiary of IEGH. Investment Evolutions "offers loans online under the consumer brand name 'Mr. Amazing Loans'."[3] Upon information and belief, Investment Evolution operates the Mr. Amazing Loans website and performs the underwriting and servicing on all loans submitted to Mr. Amazing Loans.

10. Defendant Paul Mathieson ("Mathieson") is the chief executive officer, founder and owner of IEGH and Investment Evolution. During all times relevant hereto, Mathieson conducted the affairs of IEGH and Investment Evolution and participated in the underwriting, servicing, marketing and collection of the illegal loans through Mr. Amazing Loans. In doing so, Mathieson acted within the scope of his authority as the chief executive officer and as the sole member of the board of directors of IEGH. Mathieson has personally pocketed millions of dollars through the collection of usurious loans.

## FACTS

**A.  Overview of Defendants' Enterprise.**

11. RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals *associated in fact* although not a legal entity." 18 U.S.C. § 1691(4) (emphasis added).

12. The Supreme Court has held that an association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981).

---

[3] *Id.*

13. Defendants, together with Carla Cholewinski, Matthew Banks, Harold Hansen and others not yet known to Plaintiff, constitute an enterprise hereafter (the "Enterprise") as defined in 18 U.S.C. § 1691(4).

14. The Enterprise worked together for, among other things, the common purpose of making and collecting the usurious loans at issue.

15. As chief executive officer and the sole member of the board of directors, Mathieson intentionally and willfully dominated and still dominates the operations of IEGH and Evolution Investment.

16. Mathieson established the plan to create both of these entities to make and collect the high-interest loans at issue in this case.

17. Prior to forming the businesses in the United States in 2008, Mathieson established, operated and controlled "a similar business in Australia that forms the foundation of [Defendants'] United States business model."[4]

18. At all times relevant, Mathieson was the control person and directed, controlled, and had managerial responsibility for the activities of IEGH and Evolution Investment, including the unlawful practices alleged herein.

19. For example, Mathieson "holds approximately 97.7% of the voting power of [IEGH's] outstanding capital stock" and, thus, "is able to control all matters submitted to [IEGH's] stockholders for approval."[5]

---

[4] Form 10-K: Annual Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 for the fiscal year ended December 31, 2015, IEG Holdings Corporation, p. 19 (Feb. 18, 2016), http://ir.investmentevolution.com/sec-filings?form_type=10-K#document-2772-0001493152-16-007494

[5] *Id*.

20. Moreover, upon information and belief, all of IEGH and Investment Evolution's employees and managers report directly to Mathieson, who responsible for devising and implementing all major company policies—including the various loan programs and interest rates at issue in this case.

21. Mathieson formed and used his nearly wholly-owned companies to engage in unfair, deceptive, and unethical acts that harmed Plaintiff and class members.

22. At all times relevant hereto, Mathieson ran the operations of IEGH and Investment Evolution, and directed, controlled, and participated in the creation of lending practices that led to the unlawful debt collection in Virginia.

23. Mathieson participated in and knew of the actions of IEGH and Investment Evolution in Virginia. Upon information and belief, Mathieson chose Virginia as a state where loans would be offered and personally participated and made the decision to offer loans in Virginia with an APR of 29.9%.

24. Defendants each derived income through the collection of "unlawful debt" in Virginia and engaged in activities that affected interstate and foreign commerce, including the underwriting, servicing, and collection of debts.

25. Defendants constituted an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise, *i.e.*, to make and collect on loans with excessive interest rates.

26. The Enterprise existed to obtain money for Mathieson, its other officers and associates though the unlawful creation and collection of usurious debts.

27. This conduct began sometime as early as 2008, continues to date and will be repeated again and again in the future to the detriment of consumers.

**B.      Defendants' Loans Charged Interest in Violation of Virginia Code § 6.2-1541 and RICO.**

28.     Defendants, through Mr. Amazing Loans, marketed, initiated, and collected usurious loans in Virginia.

29.     In order to qualify for the internet payday loan, Defendants, through the Mr. Amazing Loan brand name, required that consumers electronically sign a Promissory Note (the "Promissory Note").

30.     Under the terms of Defendants' Promissory Notes, the interest rates charged were significantly greater than 12% APR.

31.     As reflected by the Mr. Amazing Loan's website, the standard rate offered to consumers in Virginia was an APR of 29.9%, which is the same rate offered to Plaintiff.[6]

32.     Pursuant to this standard policy, Defendants charged Plaintiff with an annual percentage rate ("APR") of 29.9%.

33.     Section 6.2-1541 of the Virginia Code prohibits any person from making such loans to Virginians in excess of 12% APR unless that company has obtained a consumer finance license from the Virginia State Corporation Commission.  *See* Va. Code § 6.2-1501.

34.     A consumer finance license is important because it requires the Commission, before granting a license, to make a finding, among other things, that "an applicant, and its directors, senior officers and principals have the financial responsibility, character, experience and general fitness to command the confidence of the public and to warrant belief that the business will be operated lawfully, honestly, fairly and efficiently." Va. Code § 6.2-1507(A)(1).

---

[6] *See Rates and Terms*, Mr. Amazing Loans, https://www.mramazingloans.com/loan-information/rates-and-terms (last visited April 25, 2017) .

35. Neither the IEGH nor Evolution Investment had a consumer finance license when they made the loan to Plaintiff; nor they never have had or attempted to obtain such a license.

36. Under Va. Code § 6.2-1541(A), if a lender was not exempt from the provisions of those statutes and had not obtained a consumer finance license, yet nonetheless contracted to make a consumer loan, and charged, contracted for, or received, interest or other compensation in excess of 12% per year, then the loan is null and void, and the lender is not able to collect, obtain, or receive any principal, interest, or charges on the loan.

37. Upon information and belief and as evidenced by Defendants' advertising, all of Defendants' loans to consumers in Virginia contained an interest rate of 29.9% per year even though Defendants did not obtain a consumer finance license from the Virginia State Corporation Commission.

38. Accordingly, Defendants' loans were null and void, and it is unlawful for Defendants or any their affiliated entities to collect or receive any principal, interest, or charges whatsoever on said loans, including the amounts paid by Plaintiff.

39. Defendants received no less than $4,111.44 from Mr. Montgomery as a result of his illegal loan with Mr. Amazing Loans, including at least $2,813.63 which was attributed to payment for interest and other fees.

40. As demonstrated by the Form 10-K filed with the Securities and Exchange Commission,[7] consumers in Virginia have repaid at least $430,602 on the illegal loans made through Mr. Amazing Loans.

---

[7] Form 10-K: Annual Report Pursiant to Section 13 or 15(d) of the Securities Exchange Act of 1934 for the fiscal year ended December 31, 2016, *supra* note 2, at 5.

41. Pursuant to Va. Code § 6.2-305(A), Plaintiff and the class members are entitled to twice the total amount of interest paid on these loans.

42. Based on this conduct, Defendants also violated § 1962(c) of RICO, which prohibits the "collection of unlawful debt." 18 U.S.C. § 1962(c).

43. RICO defines "unlawful debt" as a debt that was incurred in connection with "the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate." 18 U.S.C. § 1961(6).

44. As reflected by Plaintiff's Promissory Note, Defendants charged an interest rate far in excess of the enforceable rate established by Va. Code § 6.2-1541(A), and, thus, Defendants violated RICO's prohibition against the collection of unlawful debt.

45. As a result of Defendants' participation in the Enterprise and violations of RICO, Defendants are jointly and severally liable to Plaintiff and the putative class members for their actual damages, treble damages, costs, and attorneys' fees pursuant to 18 U.S.C. § 1964(c).

## COUNT ONE:
## VIOLATIONS OF RICO, 18 U.S.C. § 1962(c)
## (CLASS CLAIM AGAINST ALL DEFENDANTS)

46. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

47. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for themselves and on behalf of a class—the "Virginia RICO Class"—initially defined as:

> All Virginia residents who executed a loan with Mr. Amazing Loans where the loan was originated and/or any payment was made on or after April 20, 2012.

Plaintiff is a member of the Virginia RICO Class.

48. **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief and as reflected by IEGH's Form 10-K, Plaintiff alleges that the class members are so numerous that joinder of all

is impractical. The names and addresses of the class members are identifiable through the internal business records maintained by Defendants, and the class members may be notified of the pendency of this action by published and/or mailed notice.

49. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members.

50. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the putative class. Additionally, Plaintiff's claims are based on the same facts and legal theories as each of the class members.

51. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the putative class because his interests coincide with, and are not antagonistic to, the interests of the members of the Class he seeks to represent; he has retained counsel competent and experienced in such litigation; and he intends to continue to prosecute the action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of the members of the Class. Neither Plaintiff nor his counsel have any interests that might cause them to not vigorously pursue this action.

52. **Injunctive Relief Appropriate for the Class. Fed. R. Civ. P. 23(b)(2).** Class certification is appropriate because Defendants have acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiff and the Class members. Plaintiff and the putative class seek an injunction ordering the Defendants to divest

themselves of any interest in any enterprise pled herein, including the receipt of usurious profits, and prohibiting Defendants from continuing to engage in any enterprise pled herein.

53. As alleged above, Defendants, along with other participants not yet known to Plaintiff, violated § 1962(c) of RICO by collecting income derived from the "collection of unlawful debt." 18 U.S.C. § 1962(c).

54. RICO defines "unlawful debt" as a debt which was incurred in connection with "the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate." 18 U.S.C. § 1961(6).

55. All of the loans made to Virginia residents and collected by Defendants included an interest rate far in excess of twice the enforceable rate in Virginia.

56. This conduct began sometime as early 2008 and continues to date and will be repeated again and again in the future to the detriment of Virginia consumers.

57. Plaintiff and the Class Members were injured as a result of Defendants' violations of 18 U.S.C. § 1962(c) and are entitled to treble their actual damages, which would include any interest, fees or other sums collected by Defendants.

### COUNT TWO:
### VIOLATIONS OF RICO, 18 U.S.C. § 1962(d)
### (CLASS CLAIM AGAINST ALL DEFENDANTS)

58. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

59. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for himself and on behalf of a class—the "Virginia RICO Class"—initially defined as:

> All Virginia residents who executed a loan with Mr. Amazing Loans where the loan was originated and/or any payment was made on or after April 20, 2012.

> Plaintiff is a member of the Virginia RICO Class.

60. **Numerosity**. **Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiff alleges that the class members are so numerous that joinder of all is impractical. The names and addresses of the class members are identifiable through the internal business records maintained by Defendants and the class members may be notified of the pendency of this action by published and/or mailed notice.

61. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members.

62. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the putative class. All are based on the same facts and legal theories.

63. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the putative class because his interests coincide with, and are not antagonistic to, the interests of the members of the Class he seeks to represent; he has retained counsel competent and experienced in such litigation; and he intends to continue to prosecute the action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of the members of the Class. Neither Plaintiff nor his counsel have any interests that might cause them to not vigorously pursue this action.

64. **Injunctive Relief Appropriate for the Class. Fed. R. Civ. P. 23(b)(2).** Class certification is appropriate because Defendants have acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiff and the Class members. Plaintiff and the putative class seek an injunction ordering Defendants to divest

themselves of any interest in any enterprise pled herein, including the receipt of racketeering profits; prohibiting Defendants from continuing to engage in any enterprise pled herein; and ordering the dissolution of each Defendant that has engaged in any enterprise pled herein.

65. As part of the Enterprise, IEGH and Investment Evolution entered into a series of contracts and agreements to facilitate the unlawful collection of debts from consumers, including a Consulting Agreement on September 30, 2015.[8]

66. Pursuant to the Consulting Contract, Mathieson provides "regulatory and management consulting services as requested by IEG Holdings, including services to be provided by IEG Holdings to Investment Evolution Corporation."[9]

67. In exchange, IEGH agreed to pay Mathieson $1,000,000 annually and a discretionary bonus determined by board of directors, *i.e.*, Mathieson who was the sole member of the board.

68. Defendants, along with other participants not yet known to Plaintiff, violated § 1962(d) of RICO by entering into a series of agreements to violate § 1962(c).

69. Plaintiff and the Class Members were injured as a result of Defendants' violations of 18 U.S.C. § 1962(d) and are entitled to treble their actual damages, which would include any interest, fees, or other sums collected by Defendants.

## COUNT THREE:
## VIOLATIONS OF VIRGINIA USURY
## (CLASS CLAIM AGAINST ALL DEFENDANTS)

70. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

---

[8] Form 10-K: Annual Report Pursiant to Section 13 or 15(d) of the Securities Exchange Act of 1934 for the fiscal year ended December 31, 2016, *supra* note 2, at 40.

[9] *Id*.

71. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for himself and on behalf of a class—the "Virginia Usury Class"—initially defined as:

> All Virginia residents who executed a loan with Defendants' Payday Lending Companies where the loan was originated and/or any payment was made on or after January 1, 2012.

72. **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiff alleges that the class members are so numerous that joinder of all is impractical. The names and addresses of the class members are identifiable through the internal business records maintained by Defendants, and the class members may be notified of the pendency of this action by published and/or mailed notice.

73. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether the loans made by Defendants violated Virginia Code Section 6.2-1501 because their interest levels were too high; (2) whether Plaintiff and class members are entitled to recover the total amount of interest paid, plus twice the amount of interest paid during the two years preceding this lawsuit, along with reasonable attorneys' fees and costs under Virginia Code § 6.2-305.

74. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the putative class. All are based on the same facts and legal theories.

75. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the putative class because his interests coincide with, and are not antagonistic to, the interests of the members of the Class he seeks to represent; he has retained counsel competent

and experienced in such litigation; and he intends to continue to prosecute the action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of the members of the Class. Neither Plaintiff nor his counsel have any interests that might cause them to not vigorously pursue this action.

76. **Injunctive Relief Appropriate for the Class**. **Fed. R. Civ. P. 23(b)(2).** Class certification is appropriate because Defendants have acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiff and the Class members.

77. The dispute and controversy is a justiciable matter which is not speculative, and a resolution by this court will determine the rights and interests of the parties to the Loan Agreements as well as the validity, if any, of the subject loans.

78. Pursuant to 28 U.S.C. § 2201, there is an actual justiciable controversy, and a declaratory judgment is the appropriate mechanism for the legality and enforceability of Defendants' Promissory Notes, including any whether Plaintiff must continue to pay any amounts under the Promissory Note.

79. All of the loans made by Defendants to Virginia consumer included an interest rate greater than 12%.

80. None of the exceptions to and within Va. Code ¶6.2-303 apply.

81. Thus, Plaintiff and the Class Members are entitled to recover from Defendants an amount equal to the total amount of interest paid in excess of 12%, plus twice the amount of such usurious interest that was paid in the two years preceding the filing of this action and their attorneys fees and costs. Va. Code § 6.2-305(A).

82. Plaintiff and class members are entitled to a declaratory judgment that they are not indebted to Defendants.

83. Additionally, Plaintiff seek an injunction that prohibits Defendants from collecting on these loans and requiring them to provide notice to all class members that their loans are unenforceable.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests that the Court enter judgment on behalf of themselves and the classes they seek to represent against Defendants as follows:

A. Certification of this matter to proceed as a class action under Fed. R. Civ. P. 23(b)(2) and 23(b)(3);

B. Declaratory, injunctive and damages relief as pled herein;

C. Attorney's fees, litigation expenses and costs of suit; and

D. Such other or further relief as the Court deems proper.

**TRIAL BY JURY IS DEMANDED**

Respectfully submitted,
**MARK MONTGOMERY**

By: ____/s/ Kristi C. Kelly_____
Kristi C. Kelly, Esq., VSB #72791
KELLY & CRANDALL, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572
(703) 591-0167 Facsimile
Email: kkelly@kellyandcrandall.com

James W. Speer, VSB#23046
VIRGINIA POVERTY LAW CENTER
919 E. Main Street, Suite 610
Richmond, VA 23219
(804) 782-9430
(804) 649-0974
Email: jay@vplc.org

*Counsel for Plaintiff*